# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ANTHONY HALL,** ) | Civil Action No. 7:19-cv-00870 |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Joel C. Hoppe |
| **DR. BRIAN STISSER, M.D.,** ) | United States Magistrate Judge |
| Defendant. ) | |

This civil rights action was filed by Anthony Hall, a Virginia inmate proceeding *pro se*, and the case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 39. The sole defendant in the case is Dr. Brian Stisser, who is a physician at Blue Ridge Urology at Augusta Health Hospital in Fisherville, Virginia. According to the amended complaint, Dr. Stisser was deliberately indifferent to Hall's serious medical needs, in violation of Hall's Eighth Amendment and Fourteenth Amendment rights, when Dr. Stisser performed surgery to treat Hall's prostate cancer. Although Hall admits he consented to the procedure generally, he claims that Dr. Stisser removed his entire prostate and that he did not give authorization for the removal of his entire prostate.

Dr. Stisser has filed a motion to dismiss, which is fully briefed and ripe for disposition. The briefing includes a sur-reply by Hall, ECF No. 29, which the court has considered even though Hall did not receive permission to file it.[1] Upon consideration of the parties' arguments and the entire record, the court concludes that Hall's amended complaint fails to state a valid constitutional claim against Dr. Stisser. For this reason, discussed in more detail herein, the

---

[1] Hall's briefing in opposition to the motion to dismiss primarily reiterates or elaborates on his allegations and provides some additional allegations, such as additional detail about the physical problems he experienced after the surgery. He has not separately moved to amend, but even if he had moved to amend, the additional allegations do not alter the court's conclusion that his claims are subject to dismissal.

court will grant Dr. Stisser's motion to dismiss.[2]

I. BACKGROUND

A.      **Factual Background As Alleged in the Amended Complaint**

On April 28, 2019, Hall underwent a biopsy procedure to test him for prostate cancer. On June 6, 2019, he met with Dr. Stisser, who diagnosed him with prostate cancer and informed him that his treatment options were either radiation therapy or surgery. Hall alleges that Dr. Stisser informed him that surgery was the best option to remove all of the cancer from his prostate. After a discussion about the differences between the treatments, Hall elected to have the surgery, and Hall consented to the surgery in writing. He alleges that he told Dr. Stisser at the time that he would "put my trust in him to remove the cancer from my prostate." Am. Compl., ECF No. 14 at 5.

Hall contends that "[i]t was never specified with clarity as to the removal of my entire prostrate within the content of the consent form or verbally by" Dr. Stisser. *Id.* That allegation, however, is contradicted by the consent form attached to Hall's complaint ("the Agreement"), which the court must credit in the event of a conflict with the complaint's allegations. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached [to the complaint,] . . . the exhibit prevails."). Hall signed the Agreement during his consultation. In it, Hall expressly consented to undergoing a "robotic radical prostatectomy with possible bilateral pelvic lymph node dissection." Ex. B, Pl.'s Am. Compl., ECF No. 14-1 at

---

[2] After briefing was complete on the motion, Dr. Stisser filed a notice submitting the motion for decision without oral argument. In response to that, the Clerk mistakenly sent out a new *Roseboro* notice, to which Hall responded and Dr. Stisser filed a reply. ECF Nos. 37, 38, 41. As defendants note, to the extent that Hall's response was an attempted amended complaint, Hall did not seek leave to file it, and neither it nor Dr. Stisser's reply will be considered by the court.

3. A radical prostatectomy is, by definition, a surgery to remove the entire prostate. *Radical Prostatectomy*, Harv. Med. Dictionary of Health Terms, available at https://www.health.harvard.edu/q-through-z#R-terms (last visited June 22, 2021); *Prostatectomy*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/prostatectomy/about/pac-20385198 (last visited June 22, 2021) ("Radical prostatectomy is surgery to remove the entire prostate gland and surrounding lymph nodes to treat men with localized prostate cancer.").

By signing the Agreement, Hall also consented to "the performance of procedures in addition to or different from those contemplated and described here that my Physician may deem necessary or advisable during the course of presently authorized procedures because of unforeseen conditions." Ex. B, Pl.'s Am. Compl. Hall's signature on the form appears immediately below text stating that he has "read the above authorization and consent and . . . been provided an opportunity to ask questions" and that he "give[s] authorization and consent voluntarily." *Id.* The surgery was scheduled for July 10, 2019.

Hall alleges that he learned about the removal of his entire prostate during an October 17, 2019 follow-up appointment and that Dr. Stisser told Hall that he made the decision to remove the entire prostate during the course of surgery. ECF No. 14 at 6. Again, though, that fact is belied by the form Hall signed, which informed Hall six weeks before the surgery that Dr. Stisser intended to remove the entire prostate. Hall further alleges that Dr. Stisser told him that "he decided to remove [it] due to 'poison' and there [was] no need to save it." *Id.*

Hall contends that there were options available to Dr. Stisser "under the healing art of medicine," other than the removal of the entire prostrate, such as chemotherapy or radiation, but Dr. Stisser did not offer these options before "deciding on his own" to remove the entire prostrate. *Id.*. Hall states that this decision was a poor one because test results before the

surgery showed that over 70% of his prostrate was in "good functional condition." *Id.* at 7. He states that Dr. Stisser "breached his contract" with Hall.

The amended complaint also alleges that Hall has had continuing physical problems near the area of his incision since the surgery, including "pain at the incision site, joint soreness, skin irritation," and bumps, knots or boils around his penis and testicles. He does not allege that Dr. Stisser was ever made aware of any need for continued treatment, but instead complaints about unnamed "prison medical providers and prison officials" denying him subsequent medical treatment. *Id.* at 7.[3]

For relief, Hall asks for a declaratory judgment stating that his rights have been violated, as well as compensatory and punitive damages.

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[4] To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most

---

[3] Hall also references his scalp bleeding, but does not indicate how, if at all, that is related to the removal of his prostrate or that Dr. Stisser played any role in the treatment of his scalp. Similarly, he does not name other individuals as defendants in this particular action—although at least some have been named in other complaints filed by *Hall*. Thus, the court does not construe his complaint as asserting any claims against those other persons or arising from the allegations concerning his scalp.

[4] The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

4

favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

**B. Eighth Amendment Claim**

When a physician is acting under color of state law,[5] his "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of an objectively serious medical need and disregarded that need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). To qualify as deliberate indifference, the defendant's conduct "must be so

---

[5] Hall's amended complaint contains sufficient factual matter to plausibly allege that Dr. Stisser acted "under color of state law." Specifically, Hall alleges that his treatment with Dr. Stisser was arranged through the prison physician and medical department and that he was referred to Dr. Stisser, who presumably accepted the referral. *See Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1995) (holding that a private physician without any contractual or employment obligation with the state nonetheless acts under color of state law by voluntarily accepting a referral to treat a prisoner).

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Dr. Stisser argues that Hall's amended complaint fails to allege facts to show that Dr. Stisser acted with deliberate indifference. The court agrees. First of all, nothing about Dr. Stisser's alleged conduct suggests that he was deliberately indifferent. He did not disregard Hall's prostate cancer. Instead, he treated Hall in a timely fashion and performed surgery as consented to by Hall. Although Hall alleges he has continuing problems from the surgery, he does not allege that Dr. Stisser was subsequently involved in his care or had knowledge of those problems or the ability to remedy them.

Second, as a factual matter, Hall in fact consented—in writing—to the removal of his entire prostate, because he consented to a "radical prostatectomy," which involves removal of the entire prostate. He is now claiming that fact was not made clear to him prior to the surgery. Even if true, though, he also consented to Dr. Stisser's performing additional procedures if Dr. Stisser deemed them "necessary or advisable during the course" of his surgery. Based on Hall's own allegations, Dr. Stisser told him afterward that the prostate was "poison," it had to be removed, and there was no reason not to. Thus, even if Hall did not understand that he was consenting to his entire prostate being removed, his agreement with the additional procedures constituted consent under the facts he has alleged.

Furthermore—and again, even if Dr. Stisser failed to provide adequate information to obtain an informed consent—that is a claim that sounds in negligence, not deliberate indifference. Indeed, the Fourth Circuit has repeatedly affirmed that "claims asserting issues of informed consent are claims which sound in negligence and are not sufficient to state an Eighth

6

Amendment claim." *McLean v. Casino*, No. 5:13-CT-3065-FL, 2014 WL 4384037, at *4 (E.D.N.C. Sept. 3, 2014), *aff'd*, 589 F. App'x 214 (4th Cir. 2015) (dismissing prisoner's Eighth Amendment claim that he was not informed of all the risks of prostate surgery); *Fishback v. Dep't of Public Safety & Corr. Servs.*, No. JFM–07–1883, 2008 WL 7730383, at *1, n.5 (D. Md. Sept. 17, 2008), *aff'd*, 325 F. App'x 188 (4th Cir. 2009)).

Additionally, to the extent that Hall is alleging that Dr. Stisser should have made a different treatment decision, he fails to state an Eighth Amendment claim. A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (noting that "negligence or malpractice in the provision of medical services does not constitute a claim under § 1983"); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Similarly, "a prisoner does not enjoy a constitutional right to the treatment of his or her choice" so long as the medical treatment provided is adequate. *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir. 1969)) (finding that the medical care need not be the best possible care, it only must be "reasonable" care). Notably, Hall does not dispute that the surgery was an effective treatment for his cancer.

For all of these reasons, Hall has failed to plausibly allege a violation of his Eighth Amendment rights by Dr. Stisser.

## C. Fourteenth Amendment Claim

Hall also alleges that Dr. Stisser violated his Fourteenth Amendment rights, although he does not specify how. Dr. Stisser's motion to dismiss simply argues that the Fourteenth Amendment is inapplicable because Hall is not a pretrial detainee, and Hall offers no contrary

7

argument. Some circuits have recognized that "prisoners have a Fourteenth Amendment right to informed consent" with regard to medical care and that a failure to obtain a prisoner's informed consent can give rise to a due process claim under the Fourteenth Amendment. *See Knight v. Grossman*, 942 F.3d 336, 343–44 (7th Cir. 2019) (so holding, noting it was joining "all other circuits" to have considered the question, and citing decisions from the Second, Third, and Ninth Circuits).

As noted above, the Fourth Circuit has affirmed decisions saying that a lack of informed consent, without more, is insufficient to state an Eighth Amendment claim. *See, e.g.*, *McLean v. Casino*, 589 F. App'x 214, 214 (4th Cir. 2015) (affirming district court so holding "for the reasons stated by the district court"). Based on the court's research, the Fourth Circuit has not yet recognized a Fourteenth Amendment claim for lack of informed consent. But even in the circuits where it is recognized, such claims require a significant showing to succeed and still require deliberate indifference, albeit "deliberate indifference to the prisoner's right to refuse treatment," rather than to his serious medical needs. *Knight*, 942 F.3d at 343. For example, in *Knight*, the court adopted the approach from the Second Circuit, which requires the prisoner to first show that

> (1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had received the information, he would have refused the treatment. If the prisoner establishes that his right to informed consent has been violated, we then take the second and final step of balancing the prisoner's right to informed consent against countervailing state interests. Liability arises only if, in the end, the prisoner's right outweighs the state interests.

*Knight*, 942 F.3d at 334. That court further explained that "[a] physician is deliberately indifferent to a patient's right to refuse treatment if the doctor subjectively knows that the

8

patient did not consent to the treatment or that the patient would want to know the medical information being withheld in order to decide whether to refuse the treatment." *Id.*

Hall's allegations do not plausibly allege facts to satisfy this standard. In particular, the nature of the procedure was fully disclosed to Hall by its inclusion in the consent form, even though he now claims he did not understand what it meant. Thus, it is clear that Dr. Stisser did not know Hall had not consented. It also means that Dr. Stisser did not know any medical information was withheld. Hall simply has not plausibly alleged that Dr. Stisser was deliberately indifferent toward his right to refuse treatment.

Courts have ruled against plaintiffs asserting such claims on similar facts. *See, e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir.1997) (affirming summary judgment in favor of defendants where inmate alleged she did not remember signing medical consent form and submitted a medical expert's affidavit expressing doubt about informed consent, because such evidence was "speculation [that did] not create reasonable inference of deliberate indifference"); *Shivaee v. Cube*, 2000 U.S. Dist. LEXIS 17163, at *3–4 (W.D. Va. Feb. 24, 2000) (holding no violation of the right to refuse medical treatment occurred where the prisoner plaintiff gave written consent allowing the surgery, but said he later tried to withdraw consent, where defendant had no reason to know of any desire to withdraw consent).

For these reasons, any Fourteenth Amendment claim fails.

### III. CONCLUSION

For the reasons discussed above, Dr. Stisser's motion to dismiss will be granted.[6] An appropriate order will be entered.

ENTER: June 30, 2021

---

[6] To the extent that Hall's amended complaint can be interpreted as asserting any state-law tort claims, the court declines to exercise jurisdiction over them in light of the dismissal of his federal claims. *See* 28 U.S.C. § 1367(c)(3).

9

/s/ Joel C. Hoppe
United States Magistrate Judge